**James DISNEY**

v.

**KNOXVILLE'S COMMUNITY DEVELOPMENT CORPORATION, John Ulmer, Executive Director of Knoxville's Community Development Corporation, William B. Crown, Housing Director of Knoxville's Community Development Corporation, Moon Landrieu, Secretary of the United States Department of Housing and Urban Development.**

Civ. No. 3–80–403.

United States District Court, E. D. Tennessee, N. D.

Nov. 25, 1980.

James R. LaFevor, Atty. at Law, U. T. Legal Clinic Community Office, Knoxville, Tenn., for plaintiff.

Patti Jane Lay-Fisher, W. Thomas Dillard, Asst. U. S. Attys., Knoxville, Tenn., for defendant.

## MEMORANDUM

ROBERT L. TAYLOR, District Judge.

In this action plaintiff seeks to invalidate the policy of the Knoxville Community Development Corporation (KCDC) whereby KCDC refuses to give grievance procedure hearings to former tenants who seek to challenge move-out charges assessed against them. Plaintiff seeks declaratory and injunctive relief and an award of attorney's fees pursuant to 42 U.S.C. § 1988. As against defendant Moon Landrieu, Secretary of the Department of Housing and Urban Development (HUD), plaintiff seeks a writ of mandamus compelling Landrieu to require KCDC to conform its policy to meet the requirements of federal law and federal regulations. All parties have moved for a summary judgment. Because there is no genuine issue as to any material fact, the case is in an appropriate posture for summary disposition.

Plaintiff is a former tenant of public housing owned and operated by KCDC. On June 13, 1980, plaintiff voluntarily moved out of his apartment. On June 28, 1980, he received a bill from KCDC in the amount of $251.21 for move-out charges, which included charges for cleaning, repairs, painting and replacing certain items in the apartment. Plaintiff disputed most of the charges and on July 8, 1980 requested a grievance procedure hearing. On July 28,

1980, KCDC informed plaintiff that the KCDC grievance procedure did not apply and was not available to a former tenant of its housing. The regional office of HUD concurred in KCDC's policy. Plaintiff then instituted this suit.

Plaintiff maintains that KCDC's grievance procedure policy is inconsistent with HUD regulations, the United States Housing Act of 1937, as amended, 42 U.S.C. § 1401 *et seq.*, and the Equal Protection clause of the United States Constitution.

Plaintiff's argument under HUD's regulations is based upon two regulations codified at 24 C.F.R. Part 866, Subpart B. Section 866.4(m) of these regulations states that

[t]he lease shall provide that all disputes concerning the obligations of the tenant or the PHA [Public Housing Authority] shall be resolved in accordance with the PHA grievance procedure which shall comply with Subpart B of this part.

The other regulation relied upon by plaintiff is Section 866.4(F)(10), which provides that

the tenant shall be obligated . . . [t]o pay reasonable charges (other than for wear and tear) for the repair of damages to the premises. . . .

The lease which plaintiff signed incorporated these regulations. *See* Exhibit 6 to plaintiff's complaint. Plaintiff contends that because this dispute concerns an obligation taken on by plaintiff under his lease, he is entitled to a grievance procedure hearing.

Plaintiff's argument fails to consider the reference to "tenant" in each of the regulations quoted above. Tenant is defined at 20 C.F.R. § 866.53(F) as

. . . any lessee or the remaining head of the household of any tenant family *residing in* housing accommodations covered by this Part. (Emphasis added.)

It is thus clear from the plain language of the regulations that the grievance procedure provided for at 20 C.F.R. § 866.4(m) is available only to current tenants, i. e. tenants "residing in" KCDC housing.

■ Defendant HUD has provided the Court with HUD Circular RHM 7465.9 (February 22, 1971), which sets forth requirements and recommendations for grievance procedures to be established by local housing authorities. *See* Exhibit A to defendant HUD's brief. The recommended procedures are the forerunners of the regulations at issue in this case. The circular provides the following background information concerning the need for grievance procedures.

In recent years, it has become more and more apparent that many of the problems faced by management and tenants in low-rent public housing have resulted in friction and strain in tenant-management relations and in litigation, costly to both management and tenants; much of which might have been avoided had some kind of procedure been available for grievances to be aired before an impartial individual or panel . . . [E]stablishment of a grievance procedure by every local housing authority, embodying certain standards and criteria, would improve management-tenant relationships and promote improved housing environment to the advantage of the low-rent public housing program. . . .

These statements indicate the HUD regulations were intended to reduce "friction and strain in tenant-management relations" and thus "promote [an] improved housing environment." These goals would not be achieved by making the grievance procedure available to former tenants. The relationship which the regulations seek to improve is that of management and current tenants. Consequently, the grievance procedure is only made available to current tenants. Based upon the plain language of the regulations and the intent of HUD in promulgating them, we hold that KCDC's policy of granting grievance procedure hearings to current tenants only does not violate HUD's regulations.

■ Plaintiff also argues that KCDC's policy and HUD's acquiescence therein violate the United States Housing Act of 1937, as amended, 42 U.S.C. § 1401 *et seq.*, by

depriving plaintiff of his entitlement to low cost rental housing. In the opinion of the Court, this argument is without merit. Plaintiff voluntarily vacated his apartment. He does not allege that he has since applied again and been denied admission to KCDC housing. Instead, plaintiff argues that his inability to challenge the move-out charges could result at some future time in his being denied re-admission into KCDC housing. This is so, plaintiff argues, because KCDC maintains a policy of denying applications for admissions if applicants owe a back debt to KCDC for past occupancy. The answer to this argument is found in the statute upon which plaintiff relies. It is provided at 42 U.S.C. § 1437d(c)(3) that

> ... the public housing agency shall promptly notify ... any applicant determined to be ineligible for admission to the project of the basis for such determination and provide the applicant upon request, within a reasonable time after the determination is made, with an opportunity for an informal hearing on such determination....

As mandated by this statute, plaintiff is entitled to a hearing upon his request if he is denied KCDC housing because of the disputed charges. Plaintiff could contest the charges at that time.[1]

■ Plaintiff also argues that KCDC's policy violates the equal protection guarantee of the constitution because it treats current tenants and former tenants differently with no rational basis for doing so. "Under traditional equal protection analysis, a legislative classification must be sustained if the classification itself is rationally related to a legitimate governmental interest." *United States Department of Agriculture v. Moreno*, 413 U.S. 528, 533, 93 S.Ct. 2821, 2825, 37 L.Ed.2d 782 (1973), *citing cases*. The purposes of the United States Housing Act were to remedy unsafe and inadequate housing and to remedy the acute shortage of adequate dwellings for families of low income. 42 U.S.C. § 1401. As discussed above, the goal of the grievance procedure was to insure that the management-tenant relationship in a federally-funding housing project would be an amicable one. The grievance procedure thus furthers the congressional purpose of providing adequate low income housing. The Secretary's decision to offer a grievance procedure to current tenants only was apparently based upon two grounds. First, as noted above, granting a hearing to a former tenant would not further the goal of reducing tensions between the tenants and their management. Second, the funds available to administer the purposes of the Housing Act are limited. Accordingly, the funds must be used so as to attain the maximum benefit for the housing program. In his affidavit, William B. Crown, Director of Housing for KCDC, states that ... during the calendar year of 1979, 861 persons

> vacated publicly subsidized housing owned by KCDC and during the first ten (10) months of the calendar year of 1980, 776 persons vacated the publicly subsidized housing owned by KCDC. If each of these persons availed themselves of the Grievance Procedure concerning some matter that might have arisen during the course of their occupancy, one can only guess as to the cost of implementing such a procedure.

He also states that next year available funds will be effectively reduced by approximately 23%. *See* Affidavit of William B. Crown. In the opinion of the Court, the policy whereby KCDC limits its grievance procedure to current tenants only is rationally related to the legitimate governmental interest of providing adequate housing for families of low incomes.

For the reasons stated above, it is ORDERED that plaintiff's motion for summary judgment be, and the same hereby is, denied. It is further ORDERED that the

---

1. KCDC has not sought to recover the amount of the move-out charges from plaintiff. In his affidavit, William B. Crown, Director of Housing for KCDC, states that KCDC routinely litigates these damage questions in the Knox County General Sessions Court. Should such an action be brought against plaintiff, he could dispute the move-out charges and settle the matter in that proceeding.

motions for summary judgment of defendants Knoxville Community Development Corporation and the United States Department of Housing and Urban Development be, and the same hereby are, granted. It is further ORDERED that this case be, and the same hereby is, dismissed.

Order accordingly.